IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PRECISION PIPELINE, LLC,

      Plaintiff,

v.                                     Civil Action No. 3:16-CV-00180

DOMINION TRANSMISSION, INC.,

      Defendant.

## OPINION

In 2011, Dominion Transmission, Inc. ("DTI") retained Precision Pipeline, LLC ("Precision") to build a 55-mile stretch of natural gas pipeline through Pennsylvania and West Virginia. During the course of construction, Precision encountered many unexpected issues, making the project dramatically more difficult than planned. Precision now says that DTI failed to pay Precision for its work and drastically changed the scope of the project due to inaccurate information about the number of underground obstacles along the pipeline's path.

Precision has now sued DTI asserting eight causes of action: (1) Cardinal Change – Quasi-Contract (Quantum Meruit), (2) Abandonment – Quasi-Contract (Quantum Meruit), (3) Constructive Fraud – Quasi-Contract (Quantum Meruit), (4) Breach of Contract, (5) Quantum Meruit - Quasi-Contract, (6) Pennsylvania's Contractor and Subcontractor Payment Act, (7) Pennsylvania's Underground Utility Line Protection Law, and (8) Unjust Enrichment – Quasi Contract.

DTI has moved to dismiss Precision's claims. The Court grants the motion to dismiss Counts two, six, and seven. Count two fails because the law does not recognize an independent claim for abandonment. Counts six and seven fail because they arise exclusively under Pennsylvania law, but Virginia law governs these claims.

The Court denies the motion as to the remaining claims, because Precision adequately pleads claims of breach of contract, quasi-contract, and constructive fraud.

## I. FACTS

DTI sought bids for the pipeline project by providing Precision and other potential bidders with informational documents about the scope of the work. (Compl., ¶¶ 62–63.) These documents included alignment drawings which showed that the proposed pipeline would cross ninety other underground utility lines (the "Foreign Crossings"). (Compl. ¶ 80.) DTI hired Trico Surveying and Mapping, Inc. ("Trico") and G-A-I Consultants, Inc. ("G-A-I") to design the alignment drawings. (Compl., ¶¶ 21–22.)

Precision won the bid, and in early 2011, the parties entered into two substantially similar contracts (the "Pipeline Contracts").[1] (Compl. ¶¶ 1–3; Dk. Nos. 49-1 and 49-2.) The Pipeline Contracts each contain a choice of law and forum selection clause naming Virginia as the forum and source of law.[2]

In fulfilling the Pipeline Contracts, Precision encountered 257 Foreign Crossings. Excavating around the existing underground structures required a substantial amount of additional work not contemplated in the Pipeline Contracts. (Compl. ¶¶ 112–24, 133, 140.)

---

[1] The defendant attached the two Pipeline Contracts at issue to its memorandum in support of its motion to dismiss. Because the Pipeline Contracts lie at the heart of this case and because neither party disputes their authenticity, the Court will consider the contracts at the motion to dismiss phase. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("[A court] may consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.").

[2] The choice of law provisions read:
    24.2 Governing Law; Jurisdiction. This Contract shall be governed by the laws of the Commonwealth of Virginia, without giving effect to the choice of laws principles thereof, and is deemed to have been executed, entered into and performed within Richmond, Virginia. The Parties hereby irrevocably submit to jurisdiction in the Commonwealth of Virginia, and venue shall lie in the Circuit Court of the County of Chesterfield or the United States District Court for the Eastern District of Virginia, Richmond Division. The Parties hereby waive any objection to such jurisdiction and venue.

Precision also ran into other problems including landslides, lack of access, and bad weather that made the job harder. Due to the extra work, Precision submitted, and DTI approved, a number of change orders. DTI, however, "either denied or ignored tens of millions of dollars in [legitimate] change order requests." (Compl. ¶ 164.)

Before Precision brought this case, DTI sued Precision in this Court in 2013. The Court dismissed the case because DTI had failed to comply with a contractual provision requiring the parties to engage in alternative dispute resolution before filing suit. Before the beginning of a scheduled ADR process, Precision filed suit in the Western District of Pennsylvania. The Pennsylvania court enforced the forum selection clause of the Pipeline Contracts and transferred the case to this Court. This Court stayed the case pending the parties' attempts at ADR. ADR failed, and now the case proceeds.

## II. DISCUSSION[3]

Relying on Virginia law, DTI moves to dismiss all of Precision's causes of action. Hoping to get a leg up on its opponent, Precision argues that Pennsylvania law controls this case.

The lawsuit raises two types of claims: claims that arise from the contracts, and other claims that arise under the separate legal theory of quantum meruit, also known as quasi-contract. The choice of law analysis differs depending on the claims.

---

[3] A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contested facts in the case or the factual basis of a claim or defense. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The plaintiff's allegations, however, must consist of sufficient factual matter that, accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires the plaintiff to show more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

## A. Virginia Law Governs Claims Arising Under the Pipeline Contracts

The Pipeline Contracts contain broad choice of law provisions. Specifically, the agreements say:

> This Contract shall be governed by the laws of the Commonwealth of Virginia, without giving effect to the choice of laws principles thereof. . . .

(Dk. Nos. 49-1 and 49-2 at Section 24.2.) This provision could not be clearer, and requires the Court to apply Virginia law to the claims arising from the contracts. Virginia law "looks favorably upon choice of law clauses in a contract, giving them full effect except in unusual circumstances." *Colgan v Air, Inc. v. Raytheon Aircraft,Co.*, 507 F.3d 270, 275 (4th Cir. 2007). No unusual circumstances exist here despite DTI's arguments that the Pipeline Contracts lack a reasonable relationship to Virginia and that enforcement of the provision violates Pennsylvania public policy. *Tate v. Hain*, 181 Va. 402, 410, 25 S.E.2d 321, 324 (1943) ("[T]he true test for the determination of the proper law of a contract is the intent of the parties and [] this intent whether express or implied, will always be given effect except under exceptional circumstances evincing a purpose in making the contract to commit a fraud on the law.").

Virginia law applies even though two Pennsylvania statutes attempt to prevent excavators from choosing another state's law to apply to their contracts.[4] Virginia does not look at the public policy of other states in making its choice of law decisions. In *Faltings v. International Business Machines Corp.*, the Fourth Circuit, applying Virginia's choice of law rules, enforced the choice of law provision in a contract even though the provision conflicted

---

[4] Pennsylvania Contractor and Subcontractor Payment Act (Section 24.2 of 73 P.S. § 514) ("Making a contract subject to the laws of another state or requiring that any litigation, arbitration or other dispute resolution process on the contract occur in another state, shall be unenforceable."); Pennsylvania's Underground Utility Line Protection Law, Act 287 (73 P.S. § 176, 180) ("Provisions in any contract, public or private, which attempt to limit the rights of excavators under this section shall not be valid for any reason, and any attempted waiver of this section shall be void and unenforceable as against public policy and any such attempted waiver shall be reported to the department."). These are known as statutory "anti-waiver provisions."

with another state's public policy. 854 F.2d 1316 (4th Cir. 1988). In *Faltings*, the parties chose New York law to govern their franchise contract for the delivery of computers in New Jersey. *Id.* Even though New Jersey law provided certain protections for franchisees, the court applied the chosen New York law which did not provide those protections. *Id.* The Court, therefore, will not look to Pennsylvania's public policy in this case,[5] and will apply Virginia law to claims related to the contracts.

### i. Specific Claims Governed by Virginia Law

After finding a choice of law provision valid, a court must still determine which claims the relevant law applies to. In this instance, the parties have effectively chosen Virginia law to govern the "[a]greement and the rights and obligations of the parties hereunder . . . including all matters of construction, validity and performance." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999).[6] This embraces the plaintiff's breach of contract claims and non-payment claims.

It also embraces Precision's constructive fraud claim. Although Virginia defines constructive fraud as a tort, a sufficiently wide choice of law provision may cover contract-related tort claims. *Silver v. JTH Tax, Inc.*, No. CIV.A. 2:05CV126, 2005 WL 1668060, at *3 (E.D. Va. June 21, 2005) ("[W]here a choice of law clause in a contract is sufficiently broad to encompass contract-related tort claims such as fraudulent inducement, courts will honor the

---

[5] One Circuit Court of Virginia, applying Virginia's choice of law rules, found a choice of law provision unenforceable as against the public policy of Michigan, but the Court finds the reasoning of the Fourth Circuit more convincing on this issue. *Malpractice Research, Inc. v. Norman*, 24 Va. Cir. 118 (1991).

[6] *See also Pyott-Boone Elecs. Inc. v. IRR Trust for Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 2d 532, 545 (W.D. Va. 2013) ("[T]he scope of a choice-of-law provision should, absent a showing of intent otherwise, be read to encompass all disputes that arise from or are related to an agreement. If parties wish to exclude causes of action arising in tort or by statute from the coverage of their agreement, they may do so, but they should reflect that intent in their contract.")

provision with respect both to claims arising out of the contract and related fraud claims"). In this case, the broad choice of law provision covers Precision's constructive fraud claim.

### ii. Under Virginia Law, Precision States a Claim for Breach of Contract

To state a claim for breach of contract in Virginia, a plaintiff must show: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009).

Precision states a claim for breach of contract. Precision alleges that DTI breached a number of obligations under the Pipeline Contracts, including the failure to pay for additional work necessary to complete the project and the failure to provide accurate information about the scope of the work. Precision says that it submitted valid change orders, and that DTI failed to pay for those change orders. At this stage, Precision adequately alleges that DTI breached the Pipeline Contracts and that Precision has suffered a loss as a result.

DTI's attempts to raise a number of affirmative defenses at this stage, relating primarily to the plaintiff's compliance with contractual change order procedures. Discovery may disclose facts that allow DTI to win the case based on those defenses, but they are not ripe at the motion to dismiss stage. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (calling for the denial of a motion to dismiss except in "rare circumstances where facts sufficient to rule on an affirmative defense are alleged in a complaint").

### iii. The Application of Virginia Law Requires Dismissal of the Pennsylvania Law Claims

Since Pennsylvania law does not apply to these performance issues, the Court will not consider Precision's claims under the Pennsylvania Contractor and Subcontractor Payment Act or Pennsylvania's Underground Utility Line Protection Law. The two sophisticated parties in this case chose Virginia law to govern their contracts. Even though Virginia law affords

Precision fewer protections than the Pennsylvania statutes, Precision agreed to those terms. The parties here indisputably chose Virginia law, and the Court dismisses Counts six and seven.

### iv. *Under Virginia Law, Precision Has Adequately Alleged Constructive Fraud*

To state a constructive fraud claim under Virginia law, the plaintiff must show: "(1) [a] false representation of a material fact; (2) made . . . negligently, in the case of constructive fraud; (3) reliance on that false representation to plaintiff's detriment; and (4) resulting damage." *Murphy v. Capella Educ. Co.*, 589 F. App'x 646, 652 (4th Cir. 2014) (citing *Caperton v. A.T. Massey Coal Co., Inc.*, 285 Va. 537 (2013)). Precision's claims satisfy Virginia's standard for constructive fraud by alleging that DTI negligently distributed false alignment drawings which Precision then relied on and suffered from.

When pleading fraud, a plaintiff must also satisfy Federal Rule of Civil Procedure 9(b), which requires a particularized fraud claim containing "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." That said, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 432 (4th Cir. 2015).

Here, Precision identifies Trico and G-A-I as the companies hired by DTI to create the allegedly false alignment drawings. The plaintiff also says that DTI gave Precision these drawings in October 2010. Although Precision does not identify the person who made the allegedly fraudulent claims, it names the companies charged with creating the allegedly false drawings and gives the month in which DTI distributed those drawings to Precision. These allegations satisfy Rule 9(b) in this case because they not only allow DTI to determine the

7

drawings which Precision claims contain misrepresentations, but also show that Precision possesses the fundamental documents related to its fraud claims.

The Court denies the motion to dismiss as to Count three.

### B. Precision's Quantum Meruit/Quasi-Contract Claims Pass the Motion to Dismiss[7]

Precision brings four claims under a theory of quantum meruit, also known as quasi-contract: Count one for cardinal change, count two for abandonment, count five for quantum meruit, and count eight for unjust enrichment. With the exception of Count two for abandonment, these claims survive DTI's motion to dismiss.

#### *i. Choice of Law Determination for the Quasi-Contract Claims*

The choice of law provision in the Pipeline Contracts does not cover Precision's quasi-contract/quantum meruit claims, so the Court uses Virginia's choice of law rules to determine the applicable law. "Although little direct guidance exists as to which choice of law principles govern quasi-contractual claims in Virginia . . . for the purposes of determining the forum state's choice of law principles, courts within the Fourth Circuit generally treat quasi-contractual claims as arising out of contract." *Scott & Stringfellow, LLC v. AIG Commercial Equip. Fin., Inc.*, No. 3:10CV825-HEH, 2011 WL 1348324, at *4 (E.D. Va. Apr. 8, 2011) (collecting cases). Applying Virginia's contractual choice of law rules to Precision's quasi-contract claims, the Court looks to the law of the place where the parties made the quasi-contractual agreements to assess their validity. *Scott & Stringfellow, LLC v. AIG Commercial Equip. Fin., Inc.*, No.

---

[7] Federal Rule of Civil Procedure 8 allows a party to set forth claims in the alternative and Precision may argue both that Precision breached the Pipeline Contracts and that the work performed fell outside of the scope of those contracts. *Forest City Commercial Dev., Inc. v. Agere Sys. Inc.*, No. 3:08CV328, 2010 WL 2245499, at *8 (E.D. Va. June 1, 2010).

3:10CV825-HEH, 2011 WL 2471237, at *4 (E.D. Va. June 20, 2011).[8] At this stage, the Court cannot determine where the parties made their quasi-contractual agreements, so it cannot determine which state's substantive law applies.

### ii. *Precision States Plausible Quasi-Contract Claims*

As discussed above, the Court cannot yet determine the applicable state law, but, at least in Virginia, Precision's claim for quantum meruit in Count five survives the motion to dismiss. Precision says that it performed substantially more work than originally anticipated in the Pipeline Contracts, and says that the parties created a system of approving additional work to deal with the scope of the new work and the need to keep the project moving quickly. Precision says that this process took the work outside of the scope of the original contracts and says that quasi-contract principles require that DTI pay Precision a reasonable sum for its work. A party may not seek quasi-contract claims where an enforceable contract governs its claims, but Precision adequately alleges that the work it performed fell outside of the Pipeline Contracts. *Mongold v. Woods*, 278 Va. 196, 203–04, 677 S.E.2d 288, 292 (2009).[9] The Court denies the motion to dismiss as to Count five.

Precision's cardinal change and unjust enrichment claims in Counts one and eight also survive DTI's motion to dismiss. Only when the Court can determine the location of where the parties entered into any quasi-contractual agreements can the Court determine the proper

---

[8] *See also Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 394, 469 S.E.2d 61, 63 (1996) ("[T]he nature, validity, and interpretation of automobile insurance policies, like other contracts, are governed by the law of the place where made.").

[9] *See also Royer v. Bd. of Cty. Sup'rs of Albemarle Cty.*, 176 Va. 268, 280 (1940) ("[W]here there is an express and enforceable contract in existence which governs the rights of the parties, the law will not imply a contract in contravention thereof.").

applicable law.[10] For now, the Court finds that Precision states claims under Virginia or Pennsylvania law and denies the motion to dismiss Counts one and eight.

Precision's abandonment claim in Count two, however, fails under either Pennsylvania or Virginia law. Precision did not even attempt to demonstrate that abandonment states a cause of action, and the Court could not find any precedent to support the claim. The Court will dismiss Count two.

### III. CONCLUSION

For the reasons stated above, the Court grants DTI's motion to dismiss as to Counts two, six, and seven. The Court denies the motion as to Counts one, three, four, five, and eight.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: March 23, 2017
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

---

[10] Under government contracting law, a "cardinal" change is a change in the work so extensive that it essentially eviscerates the contract. Virginia law does not recognize the cardinal change doctrine, at least in private contracts. *Centex Constr. v. Acstar Ins. Co.*, 448 F. Supp. 2d 697, 715–16 (E.D. Va. 2006). Pennsylvania recognizes the concept, but it is unclear whether it would apply to a private contract. *JHE, Inc. v. Se. Pennsylvania Transp. Auth.*, No. 1790 NOV.TERM 2001, 2002 WL 1018941, at *4 (Pa. Com. Pl. May 17, 2002) (recognizing cardinal change as a possible means to a quasi-contract claim). At this stage, the Court will not dismiss the cardinal change or unjust enrichment claims until it can determine the applicable state law. *See Forest City Commercial Dev., Inc. v. Agere Sys. Inc.*, No. 3:08CV328, 2010 WL 2245499, at *8 (E.D. Va. June 1, 2010) (denying a motion to dismiss an unjust enrichment claim due to the need for further factual development).

10