IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PRECISION PIPELINE, LLC,

    Plaintiff,

v.                                            Civil Action No. 3:16-CV-00180

DOMINION TRANSMISSION, INC.,

    Defendant.

## OPINION

In 2011, Dominion Transmission, Inc. ("Dominion"), a subsidiary of Dominion Energy, retained Precision Pipeline, LLC ("Precision"), a subsidiary of Mastec, Inc., to build a 55-mile stretch of natural gas pipeline through Pennsylvania and West Virginia. During construction, Precision came across many unexpected issues, making the project dramatically more difficult than planned. Precision says that Dominion failed to pay Precision for its work. Precision also says that Dominion drastically changed the scope of the project by providing inaccurate information about the number of underground obstacles along the pipeline's path. Dominion brings counterclaims seeking to withhold millions of dollars in retainage for Precision's alleged breaches.

Precision has moved for partial summary judgment. It asks the Court to find that Dominion breached the parties' contracts[1] by withholding 10% of Precision's payments as retainage, but then failing to pay the retainage after the work concluded. As a part of this motion, Precision asks the Court to declare that certain defenses raised by Dominion are invalid. Precision also asks the Court to find that Dominion breached the contracts by refusing to pay

---

[1] To accomplish the project, the parties actually entered two almost identical contracts.

certain disputed invoices. At this time, the Court finds that Dominion does not assert valid defenses to the claim for retainage, but that Precision cannot, as of yet, get summary judgment for the amount of the retainage. The Court denies Precision's motion as to Dominion's alleged failure to pay disputed invoices because Precision fails to provide factual support for its motion.

Dominion also moved for partial summary judgment. Dominion asks the Court to dismiss Precision's quasi-contract claims for two reasons. First, Dominion says Precision's contrary arguments in prior litigation estop all quasi-contract claims; this argument fails because the prior litigation dealt with different issues. Second, Dominion argues the parties' express contracts bar the quasi-contract claims; this issue involves disputed facts and is, therefore, not suited for resolution on summary judgment.

Dominion also says that the statute of limitations bars the quasi-contract claims, but the Court rejects this argument because prior litigation tolled the statute.

Dominion raises defenses based on equitable estoppel which simply do not apply here.

Finally, Dominion says that Precision cannot win on the merits of its claims, but, again, this issue depends on unresolved factual issues.

## I. **FINDINGS OF FACT**

In 2010, Dominion sought bids for the pipeline project by providing Precision and other potential bidders with informational documents about the scope of the work. These documents included alignment drawings, which showed that the proposed pipeline would cross ninety other underground utility lines (the "Foreign Crossings").

Precision won the bid, and in early 2011, the parties entered into two substantially similar contracts (the "Pipeline Contracts").

2

In fulfilling the Pipeline Contracts, Precision encountered significantly more Foreign Crossings than shown in the alignment drawings. Excavating around the existing underground structures required a substantial amount of additional work. Due to the extra work, Precision submitted, and Dominion approved, a number of change orders. The change order process grew cumbersome; Dominion ignored many change orders, and in some instances Precision performed extra work without submitting a formal change order.

During the course of construction, Dominion withheld 10% of all payments to Precision under the terms of the contract for retainage to ensure that Precision completed the work. This resulted in $8,188,855.46 worth of retainage which Dominion now claims it can keep in full based on Precision's own breaches of the contract.

Previously, the Court dismissed some claims and made legal rulings that affected other claims. Precision now pursues four claims: Count 1 for cardinal change, Count 4 for breach of contract, Count 5 for quantum meruit, and Count 8 for unjust enrichment.

## II. DISCUSSION[2]

### A. Precision's Motion

Dominion withheld 10% of all payments to Precision under the terms of the contract for retainage to ensure that Precision completed the work. Dominion says that it does not have to pay the retainage because of certain set-offs which reduce the amount that Dominion owes

---

[2] Summary judgment becomes appropriate when the movant establishes that no genuine dispute of any material fact exists and the party is thereby entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986). Once the movant satisfies its showing for summary judgment, the burden shifts to the non-moving party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–88 (1986). If a court finds that "reasonable jurors could find a preponderance of the evidence that the plaintiff is entitled to a verdict," the court must deny summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

3

Precision under the contract. Not surprisingly, Dominion says that the set-offs total $8,505,425—more than the amount Dominion has pocketed as retainage—and, according to Dominion, allow it to keep all the money. Precision challenges three categories of setoffs as a matter of law: (1) $7,447,269 for repairing ground "slips" (small landslides) in the years following completion of the project; (2) $172,394 for erosion control fabric ("ECF") material which Dominion says that Precision claims to have put down but actually did not; and (3) $835,058 for overpayment for pipe installation (referred to as "Base Lay" costs).

Precision also asks the Court to find, as a matter of law, that Dominion wrongfully failed to pay $1,724,056.55 on a number of disputed invoices.

### i. *Retainage and Set-off Generally*

The Court will strike some of Dominion's defenses to the retainage claim. At this time, however, it is premature to grant summary judgment for the amount of the retainage sought by Precision. Article 7 of the Pipeline Contracts allows Dominion to withhold 10% of all invoiced amounts "to secure [Precision's] performance obligations." (Pipeline Contracts pages 20 and 21.) Article 7 allows Precision to invoice Dominion for any withheld retainage after the parties have fully completed the project and resolved all disputes concerning amounts owed.

Dominion says that it should not have to pay the retainage under the doctrine of recoupment, or a set-off. In Virginia:

> The rights of recoupment—or "set-off," as it is sometimes called—does not factor into the plaintiff's burden on damages. Rather, the burden of proving a set-off falls on the defendant who asserts it. *Regency Commc'n v. Cleartel Commc'n, Inc.*, 304 F. Supp. 2d 1, 6–7 (D.D.C. 2004) (holding that set-off is either an affirmative defense or a compulsory counterclaim to be affirmatively pled by the defendant). In pleading a recoupment, the defendant has an opportunity to deduct from any damages awardable to the plaintiff amounts to which it has shown it is due under the same contract, thus avoiding a recovery that may unduly overcompensate the plaintiff.

4

*SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co. of N. Carolina*, 809 F. Supp. 2d 485, 490 (E.D. Va. 2011). Dominion asserts three categories of set-off: poor workmanship leading to "slips," overpayment for erosion control fabric, and overpayment for "base lay."

### ii. *Retainage Withholding for Slips*

Dominion has withheld $7,447,269 based on its costs to repair 55 small landslides, or "slips" that occurred after the completion of the pipeline. Dominion says that Precision did not correctly put soil along slopes of the pipeline. As time passed and rains fell, the soil could no longer hold on the slopes, gave way, and slipped down. Dominion says that Precision bears the blame for this problem.

The main problem with this theory is that Dominion has no evidence to support it. Set-off is an affirmative defense, and Dominion bears the burden of establishing it.

What Dominion calls slips are actually a geological phenomenon known as "slump." Slump occurs when a body of dirt or rock layers slides down a slope. It happens because the downward force of gravity becomes stronger than the horizontal forces holding the material to the hillside. Slump can happen because artificially made hills are too steep; travelers frequently see it in cuts on roadsides. But slumps also occur naturally, due to a variety of causes.[3]

Dominion must prove that Precision caused the slumps in this case. To do so, Dominion needs expert testimony. *Crum v. Equitrans, LP*, Case No. 7:12-80-KKC, 2014 WL 1883801, at *4 (E.D. Ky. May 12, 2014) ("Here, the issue is whether a layperson, untrained in engineering or a comparable field of study, is equipped to opine as to how Equitrans' pipeline construction caused a landslide, and how that landslide damaged the foundation and brick of Crum's house. The Court finds that this subject-matter is outside the scope of a layperson, and that the plaintiff

---

[3] Leet and Judson, *Physical Geology*, (3d ed.), (1965), pp. 125–26; https://www.ndsu.edu/fargo_geology/mass_wasting/slumptypes.htm.

needs expert testimony-which she does not have-to prove such a complex question of causation.").

Dominion does not have an expert to support its theory. Dominion instead cites the testimony of its employee on his opinions on the slips, but the employee does not qualify as an expert. Dominion also relies upon the testimony of Precision's expert, Stephen Pasternack. Pasternack says that in some areas the slips occurred because "the material placed on the steepened slopes [did not] have enough strength to prevent sliding down the hill." (Pasternack Dep. at 78:5-6.) But the fact that the slopes could not resist gravity does not mean that Precision is at fault; a design flaw or force majeure could have caused the problem. Without any expert testimony on the subject, Dominion cannot ask a lay jury to determine the complicated issue of causation. The Court will grant Precision's motion for summary judgment, and strike Dominion's defense of setoff based on slips.

### iii. *Retainage Withholding for ECF Material*

Precision asks the Court to rule as a matter of law that Dominion must pay what Precision has charged for erosion control fabric, regardless whether Dominion installed the fabric or not. Precision argues for this absurd result because Dominion signed off on work, including the amount of fabric installed, as the job went along. Now, according to Precision, Dominion cannot go back and audit the amount of fabric installed. Precision also says that Dominion's daily sign offs equitably estop Dominion from claiming that Precision actually overbilled for materials used. Precision's arguments are the equivalent of sticking its tongue out at Dominion and saying, "Maybe we put it in; maybe we didn't, but you're stuck with the bill." These arguments fail.

6

Each day during the course of construction, Dominion inspectors signed off on the amount of work performed by Precision. This included the amount of ECF laid by Precision. Once Dominion's inspectors signed off on the work, Precision could bill the work. Dominion says that near the end of the project, it realized that its inspectors often failed to see how much ECF had been actually installed. Dominion then conducted an audit and determined that it had overpaid for the ECF to the tune of $172,394.

The right of inspection in the Pipeline Contracts does not, as Precision argues, prevent Dominion from auditing the job to see whether a breach occurred. Under Precision's argument, it could bill Dominion for building the Golden Gate Bridge and, unless Dominion complained immediately, it would just be too bad. Nothing in the contracts mandates this absurd result.

Second, a party invoking equitable estoppel must show the following by clear and convincing evidence: a representation, reasonable reliance, a change of position, and detriment. *Princess Anne Hills Civil League v. Susan Constant Real Estate Tr.*, 243 Va. 53, 59, 413 S.E.2d 599, 603 (1992). In this case, the Pipeline Contracts say that approval or acceptance of work does not constitute an endorsement or confirmation of the work. (Article 11.2.) This would make Precision's so-called reliance on the daily approvals unreasonable. Moreover, the Court cannot see how Precision changed its position, or suffered a detriment, by submitting inflated bills for ECF. The Court denies the motion for summary judgment on this issue.[4] A jury can analyze Dominion's ECF audit at trial.

---

[4] Dominion has refused to pay some of Precision's invoices for ECF, and Precision has moved for summary judgment requiring Dominion to pay the amounts of those invoices. The amount due for ECF remains in dispute for two reasons: first, as noted above, Dominion's audit presents jury questions. Second, Precision has offered no evidence that it supplied the ECF in the invoices. The Court, therefore, denies Precision's motion for summary judgment on these invoices.

7

### iv. *Retainage Withholding for Base Lay Price*

Precision asks the Court to determine, as a matter of law, that Dominion cannot withhold $838,058 dollars as retainage based on over-payment for "Base Lay" costs. The Court denies the motion because Precision relies on an incorrect interpretation of the Pipeline Contracts to support its theory.

The contracts define two types of work, known as "Base Lay" and "Special Work." Exhibit A of the Pipeline Contracts defines Base Lay as clearing rights of way, grading rights of way, cutting and replacing sections of pipeline, testing the pipeline, and hauling, storing, and unloading pipe and other materials. This Base Lay work, priced at $256.09 per foot, "does not include" Special Work. (Dk. No. 169-11.) Exhibit A lists various items of Special Work, which include pipeline-related work priced by the foot, pipeline-related work priced by the item, and work unrelated to the pipeline itself, such as fencing, priced by the foot. Examples of Special Work include road, railroad, wetland, river, and stream crossings. The prices for the various pieces of Special Work vary based on the kind of work involved, and the Pipeline Contracts say that Special Work is not included in the Base Lay price.

Pursuant to the Pipeline Contracts, Dominion pays Precision for work performed by the foot. The parties differ in their interpretation of how to pay Precision per foot. Precision says it should receive the Base Lay price for the entire length of the pipeline, plus additional per-foot payments for Special Work that came up along the way. Dominion, in contrast, says that Precision should get paid for either Base Lay or Special Work depending on the kind of work done.

Although the contract defines Base Lay and Special Work, it does not say whether Precision is entitled to the Base Lay price for the entire pipeline distance, with costs for Special

8

Work added to that amount, or whether each foot of Special Work supplants a foot of Base Lay when computing the price of the project. "Ordinarily, it is the duty of the court to construe a written contract when it is clear and unambiguous on its face, but when a contract is ambiguous it is necessary to resort to parol evidence to ascertain the intention of the parties. In such cases, if reasonable people could draw different conclusions, the meaning of the contract upon the evidence presented should be submitted to the jury." *Online Res. Corp. v. Lawlor*, 285 Va. 40, 54, 736 S.E.2d 886, 894 (2013).

Since the pricing terms of the contact do not solve this riddle, the Court must look to other parts of the Pipeline Contracts and to parol evidence in the form of draft pricing schedules. The parties originally estimated 222,158 feet of Base Lay while simultaneously estimating an overall length of 227,576 feet; this immediately suggests that the parties did not intend to pay Precision the Base Lay price for the entire pipeline and then for Special Work on top of that distance. If the parties had intended to pay Precision for every foot of Base Lay, they would not have estimated the amount of Base Lay as less than the length of the pipeline. This demonstrates that the parties intended to pay Base Lay for something less than the whole pipeline, and Special Work for the part of the pipeline requiring Special Work.

Dominion has withheld $838,058 because it says that it already paid Precision for 227,576 feet of Base Lay materials, equal to the entire estimated length of the pipeline. On top of that, it paid Precision for 5,787 feet of "Authorized Special Work." Since Precision should not collect the Base Lay cost for the 5,787 feet for Special Work, Dominion is entitled to a set off for the over payment.

Precision does not dispute that the over payment is $838,058. Dominion is, therefore, entitled to a set off for $838,058 for overpayment for Base Lay.

9

### v. *Precision's Motion for Summary Judgment for the Amount of Retainage*

Precision moves the Court to enter summary judgment on its behalf for the amount of the retainage. Summary judgment on that issue is premature at this time.

The Retainage section of the Pipeline Contracts does not have a dispute resolution mechanism laying out how the parties must resolve issues before Precision has a right to recover retainage. Instead, the Retainage section says that Precision may invoice Dominion for the retainage amount once (1) the pipeline is ready for service, (2) all tasks have been completed, (3) Precision has submitted the proper forms, manuals, and quality verification documents, (4) the parties have settled all of their accounts and Precision has released Dominion from all liens, (6) Precision has completed clean up, and (7) Dominion has issued a certificate of completion. (Pipeline Contracts pages 19 and 20.)

Obviously, the parties have not settled their accounts, and Precision may not, under the terms of the contract, submit an invoice for retainage. By declining to agree to a settlement of the accounts settled, Dominion can, in theory at least, refuse to pay the retainage forever. At some point, its refusal becomes unreasonable, and this case is within millimeters of that point. But at this time, no one has argued that the refusal to settle accounts is unreasonable, so the Court will not enter summary judgment for Precision.

### B. Dominion's Motion for Summary Judgment

Dominion moves for partial summary judgment on Count 1 (Cardinal Change); portions of Count 4 (Breach of Contract); Count 5 (Quantum Meruit); and Count 8 (Unjust Enrichment). It says that judicial estoppel prevents Precision from bringing forth its quasi-contract claims, the express contract governs the issues raised in the quasi-contract claims, and that the statute of limitations bars most of the quasi-contract claims. Dominion also says that Precision's unknown

foreign crossing claims (both in contract and quasi-contract) fail because they are barred by collateral estoppel and because Precision cannot rely on Pennsylvania's One Call statute as a source of Dominion's alleged breach. Finally, Dominion says that it did not breach the contract as a matter of law because Precision waived the breach of contract claim and because Precision failed to follow the change order mechanism outlined in the contracts. Each argument fails.

### i. *Judicial Estoppel Related to Quasi-Contract Claims*

Dominion asks the Court to find Precision judicially estopped from asserting its quasi-contract claims in Counts 1, 5, and 8 based on prior positions before the Court. The Court denies the motion on this issue because Precision did not take an inconsistent prior position that bars its current quasi-contract claims.

"Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation. The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28–29 (4th Cir. 1995)). For judicial estoppel to apply, the party seeking estoppel must show that the other party has previously taken an inconsistent position before another court, the position is one of fact as opposed to one of law, the court in the prior case accepted the position, and the party to be estopped has acted intentionally. *Id.*

Dominion brought a prior breach of contract case in this Court based upon similar facts and the same contracts as in the present case. *See Dominion Transmission, Inc. v. Precision Pipeline, Inc.*, Case No. 3:13-cv-442-JAG. In that earlier case, Precision moved to dismiss Dominion's claims because the Pipeline Contracts covered Dominion's contract claims and required mediation before the Court could hear the case. The Court found, under Article 23 of

the Pipeline Contracts, that "any" dispute arising from the Agreement falls under the mandatory dispute resolution process.

Dominion says that Precision's prior argument estops it from bringing quasi-contractual claims. This defense fails. The fact that Precision previously sought mediation based on Dominion's breach of contract claims does not mean that Precision cannot also bring quasi-contract claims that fall outside the scope of the contract.

*ii. Quasi-Contract*

Dominion argues that the written contract in this case precludes quasi-contract claims. Virginia makes clear that quasi-contract claims cannot lie where an enforceable contract governs the parties' rights. *Royer v. Bd. of Cty. Sup'rs of Albemarle Cty.*, 176 Va. 268, 280, 10 S.E.2d 876, 881 (1940) ("[W]here there is an express and enforceable contract in existence which governs the rights of the parties, the law will not imply a contract in contravention thereof."). Since the parties had an express and enforceable contract, Dominion says that Precision cannot rely on quasi-contractual theories to prevail.

Dominion's argument, however, ignores Precision's theory of the case. Precision says that Dominion's description of the pipeline work differed so dramatically from what it wound up doing that Precision's work falls outside the scope of the contract. The determination of these issues—what Precision did, how the required work matched up with the work in the contract, and how far the work went beyond what the contract described—involves detailed factual analysis. This analysis can only occur in the context of a trial in which the parties present a full evidentiary record. It may well prove that Precision has only contractual remedies. At this point, however, the parties dispute whether the work falls in the contract, and the Court lacks

sufficient evidence to decide the issue. For this reason, the Court denies Dominion's motion for summary judgment on quasi-contract claims.

### iii. *Whether the statute of limitations bar Precision's quasi-contract claims*

Dominion says the statute of limitations bars Precision's quasi-contract claims. This issue comes down to whether the Court's order compelling mediation in the prior case brought by Dominion prevented Precision from asserting its quasi-contract claims and therefore tolled the statute of limitations on those claims. The Court has already determined that Precision's position in the prior case concerning the scope of the mediation clause does not estop it from bringing its current quasi-contract claims. Although not a contract remedy, the quasi-contract claims find their birth in the contract. The ADR provision required mediation of claims "arising" from the contracts. This provision required mediation of both contract and non-contractual disputes arising from the construction project. The Court's order requiring mediation before the Court would hear Dominion's claims therefore tolled Precision's current quasi-contract claims.

### iv. *Collateral estoppel*

Collateral estoppel does not prevent Precision from arguing that it relied on the alignment drawings in calculating its bid.

In prior litigation, the Western District of Pennsylvania found that Precision "had knowledge that Defendants' drawings did not depict all crossings Plaintiff was bound to encounter" and dismissed Precision's case against Trico and G-A-I, the companies that Dominion hired to create alignment drawings depicting foreign crossings. *See Precision Pipeline, LLC v. Trico Surveying & Mapping, Inc.*, No. CV 13-1823, 2016 WL 5407729, at *1 (W.D. Pa. Sept. 28, 2016), aff'd, 712 F. App'x 144 (3d Cir. 2017). The court there dismissed the case for three independent reasons: Trico and GAI lacked privity with Precision and did not owe

it a duty of care, statute of limitations issues, and—relevant here—because Precision failed as a matter of law to establish justifiable reliance on the drawings.

Precision appealed, and the Third Circuit upheld the dismissal based only on the first ground. The circuit court did not address the justifiable reliance finding.

Pennsylvania's collateral estoppel law applies here because the prior case involved a federal court in Pennsylvania exercising diversity jurisdiction. *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 Fed. App'x 256, 261. (4th Cir. 2008). Under Pennsylvania law, collateral estoppel precludes the relitigation of an issue determined in a previous action where:

> (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*Taylor v. Extendicare Health Facilities, Inc.*, 637 Pa. 163, 198, 147 A.3d 490, 512 (2016), cert. denied, 137 S. Ct. 1375, 197 L. Ed. 2d 555 (2017). Where an appellate court upholds a trial court on one ground and does not address other holdings by the trial court, those holdings are not "essential to the judgment" and do not, therefore, create collateral estoppel on those issues. *See* Second Restatement of Judgments § 27; *Masco Co. v. United States*, 303 F.3d 1316; 1330–31 (Fed. Cir. 2002).

Here, the Court did not uphold the prior ruling on the ground for which Dominion asserts collateral estoppel. For that reason, collateral estoppel does not bar Precision's claims.

### v. *Preemption*

Precision alleges that Dominion violated Pennsylvania's One-Call Act and therefore violated an Applicable Law provision in the Pipeline Contracts. The contracts require Dominion to comply with "applicable Laws and Codes," which it defines as "federal, state, and local laws,

as well as industry codes and standards." (Pipeline Contracts §§ 10.2.1; 1.1.) Dominion argues that the Pipeline Safety Improvement Act ("PSA"), 49 U.S.C. §§ 60101 *et seq.*, preempts the state pipeline safety law and that Precision may therefore not rely on the state law as a basis for a breach of contract.

The PSA says that states may adopt rules for intrastate pipelines only if those standards are compatible with the PSA. Further, states may not adopt or continue to enforce safety standards for interstate pipelines, unless "the program meets the requirements for one-call notification programs under this chapter." Dominion does not say how Pennsylvania's rules differ from the federal rules. Rather, it argues that Pennsylvania's one-call statute must violate the PSA because the Pennsylvania legislature has tried to amend its law to get it into compliance with the PSA requirements. This Court holds deep respect for the Keystone State's legislative bodies; indeed, the undersigned's uncle and cousin, C. Timothy Slack,[5] served in the Pennsylvania House of Representatives for five terms. Nevertheless, a state legislature's desire to change a statute is scant evidence of its compliance with federal mandates.

The Court denies Dominion's motion for summary judgment on preemption grounds.

### vi. *Whether Precision Waived its Breach of Contract Claims and Whether Dominion did not Breach the Contract as a Matter of Law.*

Dominion claims that Precision waived its breach of contract claims through answers to interrogatories and also says that it did not breach the contract as a matter of law based on the Change Order provision. Both of these arguments fail.

First, during discovery, counsel for Precision told Dominion's lawyers that it would no longer pursue Count 3. By mistake, Precision's responses to discovery said that it would not

---

[5] In a tangled web worthy of a romance novel, Representative Slack was married to the undersigned's father's sister and, at the same time, was the undersigned's mother's cousin.

15

pursue damages for Count 4, breach of contract. Citing this error, Dominion now moves for summary judgment crying in a loud voice, "Gotcha!" If every typographical error resulted in summary judgment, lawyers would not be able to afford malpractice insurance. Dominion knew the contract claim was alive and well. The Court will not bar Precision's claims based on what it deems a typographical error, and the Court denies Dominion's motion.

Second, the Court rejects Dominion's argument that it did not breach the contracts as a matter of law based on Precision's untimely submission of change orders under the Change Order provision of the Pipeline Contracts. The facts presented demonstrate that Dominion may have waived full compliance with the deadlines of the Change Order provision, and a jury must decide this issue.

The Pipeline Contracts lay out a change order process in which the Dominion could require additional work or Precision could request approval of such work. Under the terms of the contracts, Precision must submit a change order within five days. The Pipeline Contracts also contain a non-waiver provision, which says that "failure of [Dominion] to demand strict performance of the terms of, or to exercise any right conferred in, this Contract shall not be construed as a waiver or relinquishment of its right to assert or rely upon any such term or right in the future, or a consent to any continuing or subsequent failure or breach." (Agreement Article 24.3.)

In Virginia, waiver of express terms can occur. Even in cases like this one, where a contract contains an anti-waiver provision, a party's continued payment under the contract in spite of the other party's breach could lead a jury to determine that the first party intended to waive the change-order process *and* the anti-waiver clause. *Bernsen v. Innovative Legal Mktg., LLC*, 885 F. Supp. 2d 830, 834 (E.D. Va. 2012) (denying the defendant's motion for summary

judgment and saying that "an 'antiwaiver' clause, like any other term in the contract, is itself subject to waiver or modification by course of performance and that whether such waiver or modification has occurred is a question for the factfinder"). Precision points to nine instances in which Dominion approved a change order out of time, and a jury can determine whether Dominion intended to waive its rights.

The construction project in this case is enormously complicated. In such projects, the change order process often—if not typically—is unworkable. The parties on the ground have to keep working to get the job done. If the parties here had stopped to debate change orders every time something new came up in the work, they would still be somewhere in Pennsylvania arguing about how to cross streams and rivers. The practicalities of the project almost required a waiver of the change order process and the draconian anti-waiver clause. A jury should decide this issue.

### III. CONCLUSION

For the reasons stated above, the Court grants in part and denies in part the motions. As to Precision's motion, the Court denies Precision's motion and declines to find Dominion in breach of the retainage clause of the contract. The Court finds, however, that Dominion is not entitled to retainage based on slips. A jury must determine whether Dominion is entitled to retainage based on ECF material charges, and the Court finds that Precision is not entitled to Base Lay footage for the entire pipeline length. The Court also denies Precision's motion regarding invoices 10-137-68, 69, 70, 71, 78, and 80 because it provides no facts to support its claims.

The Court denies Dominion's. First, the Court denies the motion because judicial estoppel and collateral estoppel do not bar Precision's claims. Further, the Court denies the

motion because the Court cannot now determine whether Precision's quasi-contract claims are barred by the express contracts between the parties. Next, the Court denies the motion on statute of limitations grounds because the statute was tolled during arbitration. The Court next denies summary judgment because Dominion has failed to prove that Pennsylvania's One-Call statute is inapplicable to the dispute. Finally, the Court denies the motion because Precision did not waive its suit as to its breach of contract claim through discovery and Dominion has failed to show that it did not breach the contract as a matter of law.

An appropriate Order shall issue.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: August 7, 2018
Richmond, VA

/s/ 
John A. Gibney, Jr.
United States District Judge